**In re James P. BROWN and Sharon L. Vogan, Debtors.**

**Mark CHOI, Plaintiff,**

v.

**James P. BROWN and Sharon L. Vogan, Defendants.**

Bankruptcy No. 95–21982.
Adv. No. 95–2316.

United States Bankruptcy Court, W.D. Pennsylvania.

Oct. 17, 1996.

David Abrams, Monroeville, PA, for Mark Choi.

Lee David Moses, Pittsburgh, PA, for James P. Brown.

Mark Goldner, Pittsburgh, PA, for Sharon L. Vogan.

## OPINION [1]

WARREN W. BENTZ, Bankruptcy Judge.

### Introduction

Before the Court is the two-count Complaint of Mark Choi ("Choi"). Choi seeks to except from discharge the obligations due him from James P. Brown ("Brown") and Sharon L. Vogan ("Vogan") (Brown and Vogan collectively, "Debtors"). The obligations arose from a motor vehicle accident in which Brown, while driving a 1979 Ford Van owned by Vogan and while under the influence of alcohol, struck a motorcycle driven by Choi. The accident caused Choi serious injury.

Count I of the Complaint sets forth the allegations against Brown. Brown has stipu-

---

1. This Opinion constitutes this Court's findings of fact and conclusions of law.

lated that the debt claimed by Choi is not dischargeable as to him.

Count II of the Complaint sets forth the allegations against Vogan. Vogan is Brown's spouse. Choi alleges that Vogan voluntarily allowed Brown to operate a vehicle registered in her name when she knew that financial responsibility was required on the vehicle and was not maintained; that Vogan acquiesced in the use of the vehicle by Brown; and that Vogan entrusted the vehicle to Brown whom she knew or should have known would operate the vehicle while under the influence of alcohol. Choi alleges that Vogan's actions constitute a willful and malicious injury and that such actions are a basis to deny Vogan a discharge of her obligation to Choi.

An evidentiary hearing was conducted on June 21, 1996 in regard to the dischargeability of Choi's claim against Vogan. The matter is now ripe for decision.

### Findings of Fact

Brown and Vogan have resided together in the same residence since approximately 1986. They were married on July 7, 1990. Prior to March, 1992, Brown was convicted of driving under the influence twice. Between January and October 22, 1992, Brown had no driver's license and had undergone an alcohol rehabilitation program. In February, 1992, Vogan was cited for Brown's act in driving Vogan's vehicle without a license. In March, 1992, the Debtors purchased two vehicles from Brown's employer, a station wagon and a 1979 Ford Van ("Van"). Since Brown had no driver's license, both vehicles were registered in Vogan's name.

Vogan testified that at the time that the station wagon and Van were purchased in March, 1992, Brown agreed that Brown would not drive without a license, that Brown would reduce his alcohol consumption, and that Brown would work towards obtaining a driver's license.

Vogan was aware that Pennsylvania law requires the owner of vehicles to maintain financial responsibility. When the vehicles were purchased in March, 1992, she obtained insurance. The insurance coverage lapsed not later than September 28, 1992 due to non-payment of the required premiums. Vogan knew of the lapse.

Brown worked as a contractor. The Van was purchased for transporting Brown and his tools to his various job sites. Although the Van was purchased to transport Brown, he agreed with Vogan that he would not drive the vehicle. Either Vogan or another licensed driver was to operate the Van. Vogan had the only set of keys which she kept in the residence on a hook by the door, a place obviously accessible to Brown.

Vogan knew of Brown's inclination to drink. Alcohol was kept in the residence even after Brown was in an alcohol rehabilitation program. Vogan testified that between March, 1992 and October, 1992, Brown had kept his agreement with Vogan, and that Brown did not drive except on one occasion when she was falling asleep at the wheel and she requested that he complete the drive home. Brown was never unexpectedly gone from the residence.

When Brown was working at a construction site, either Vogan or one of Brown's employees drove the Van to and from the work site. Vogan testified that she had no knowledge that Brown ever drove the Van himself between March and October 22, 1992.

On October 22, 1992, the date of Brown's accident with Choi, Vogan left for school at approximately 7:30 a.m. Brown was not working that day and remained in bed when Vogan left. The Van was at the residence. The keys to the Van were also at the residence. Vogan returned from school at approximately 4:00 p.m. and noticed that the Van and Brown were gone. Vogan was upset. She did not know under what circumstances the Van had been taken, but she did not report the Van stolen. Vogan called various taverns in an unsuccessful attempt to locate Brown. When Vogan noticed that Brown and the Van were gone, we can infer from the fact that Vogan did not call the police, but instead called various taverns to locate Brown, that Vogan knew or suspected that Brown had taken the Van to go binging. At 10:30 p.m., Brown called Vogan and informed her that he had been involved in an

accident. Brown was intoxicated at the time of the accident.

### Issue

Whether the debt owed to a victim of an automobile accident is nondischargeable in a Chapter 7 bankruptcy where the debtor-wife is the owner of a non-insured vehicle which caused the accident and which was operated without the debtor's permission by the debtor's spouse while the spouse was under the influence of alcohol, where the spouse had a drunk driving record, was undergoing an alcohol rehabilitation program, and the debtor-wife kept the keys on a hook in plain view?

### Discussion

Brown admits that any obligation he owes Choi is nondischargeable. His admission is appropriate under 11 U.S.C. § 523(a)(9) which provides that a discharge does not discharge an individual debtor from any debt—

> for death or personal injury caused by the debtor's operation of motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance; ...

11 U.S.C. § 523(a)(9).

Section 523(a)(9) does not apply to Vogan. Vogan did not operate the vehicle. Choi relies on § 523(a)(6) for his claim of nondischargeability against Vogan. Section 523(a)(6) provides that a debt "for willful and malicious injury by the debtor to another entity" is not dischargeable.

■ Choi has failed to prove one of his key allegations against Vogan—that Vogan granted permission and/or allowed Brown to use the Van on October 22, 1992. There is no evidence that Brown had Vogan's permission to use the Van or that neighbors or workmen or others ever saw Brown driving the Van. For some seven months prior to the accident, Brown had abided by his agreement with Vogan not to drive.

■ Vogan did not maintain liability insurance coverage or financial responsibility pursuant to the Pennsylvania Motor Vehicle Code on vehicles registered in her name at the time of the accident. Under § 523(a)(6), the question is whether Vogan's failure to maintain insurance on the Van registered in her name and which was involved in the accident which caused Choi's injuries constitutes a willful and malicious injury.

This issue has been addressed by numerous courts. The majority of courts have determined that the mere failure to carry insurance is not a willful and malicious act on the theory that when the insurance terminated, there was no intent to harm the injured party and that the failure to maintain insurance is not the act which causes harm to the injured party; that some further event, such as an accident, causes the harm. *Pechar v. Moore*, 98 B.R. 488 (D.Neb.1988); *In re McConnehea*, 96 B.R. 121 (S.D.Ohio 1988); *In re Grisham*, 177 B.R. 306 (Bankr.W.D.Mo.1995); *In re Perry*, 166 B.R. 319 (Bankr.M.D.Tenn.1994); *In re Bex*, 143 B.R. 835 (Bankr.E.D.Ky.1992); *In re Druen*, 121 B.R. 509 (Bankr.W.D.Ky.1990); *In re Fate*, 100 B.R. 141 (Bankr.D.Mass.1989); *In re Granda*, 98 B.R. 598 (Bankr.S.D.Fla.1989); *In re Kimsey*, 97 B.R. 1003 (Bankr.D.Neb.1989); *In re Eberhardt*, 92 B.R. 773 (Bankr.E.D.Tenn.1988).

A few courts have found that such claims are non-dischargeable on the basis that it is foreseeable that other persons will sustain injury when a vehicle owner fails to maintain insurance and that it is the failure to maintain insurance which necessarily causes economic injury. *In re Ussery*, 179 B.R. 737 (Bankr.S.D.Ga.1995); *In re Whipple*, 138 B.R. 137 (Bankr.S.D.Ga.1991).

A similar split among reported decisions exists in cases where an employer has failed to maintain worker's compensation insurance and attempts to discharge a claim related to an employee injury. The majority permits a discharge of the debt. *In re Walker*, 48 F.3d 1161 (11th Cir.1995); *Szewczyk v. Wojtaszek*, 164 B.R. 604 (N.D.Ill.1994); *In re France*, 138 B.R. 968 (D.Colo.1992); *In re Brock*, 186 B.R. 293 (Bankr.N.D.Ga.1995); *In re Grzywacz*, 182 B.R. 176 (Bankr.E.D.Mich.1995); *In re Betts*, 174 B.R. 636 (Bankr.N.D.Ga.1994); *In re Bailey*, 171 B.R. 703 (Bankr.N.D.Ga.1994); *In re Leahy*, 170 B.R. 10 (Bankr.D.Me.1994); *In re Annan*, 161 B.R.

872 (Bankr.D.R.I.1993); *In re Kemmerer,* 156 B.R. 806 (Bankr.S.D.Ind.1993); *In re Frias,* 153 B.R. 6 (Bankr.D.R.I.1993); *In re Mazander,* 130 B.R. 534 (Bankr.E.D.Mo. 1991); *In re Collins,* 109 B.R. 541 (Bankr. D.Mass.1989); *In re Zalowski,* 107 B.R. 431 (Bankr.D.Mass.1989).

A few courts have found that such claims are nondischargeable. *In re Strauss,* 99 B.R. 396 (N.D.Ill.1989); *In re Verhelst,* 170 B.R. 657 (Bankr.W.D.Ark.1993); *In re Peel,* 166 B.R. 735 (Bankr.W.D.Okla.1994); *In re Saturday,* 138 B.R. 132 (Bankr.S.D.Ga.1991); *In re Erickson,* 89 B.R. 850 (Bankr.D.Idaho 1988); *In re Holmes,* 53 B.R. 268 (Bankr. W.D.Pa.1985) (Washabaugh, J.).[2]

 The Court of Appeals for the Third Circuit strictly interprets § 523(a)(6) to require that a debtor either have a purpose of producing injury or take actions that have a substantial certainty of producing injury. *In re Conte,* 33 F.3d 303 (3d Cir.1994). Willfulness requires more than a highly likely but unintended result of the debtor's action. *Id.* at 307.

Choi's injury was not substantially certain to result from Vogan's failure to maintain insurance on the Van. It cannot be said that Vogan intended for Choi to suffer injury or that there was an unbroken chain of events leading from Vogan's failure to maintain insurance to Choi's damages.

Perhaps Vogan was negligent. Perhaps she should have foreseen the possibility that Brown would drink—and drive—and cause an accident. So, perhaps she is liable. But we are dealing here with dischargeability. Even if Vogan is liable, her conduct did not constitute a "willful and malicious injury" by her to another, as defined in this Circuit under *In re Conte,* supra, and therefore, whatever liability she had must be discharged in her bankruptcy.

### Conclusion

We find that Vogan's conduct, including her failure to maintain insurance, does not qualify as a willful and malicious act under

**2.** In *Holmes,* additional aggravating circumstances beyond the mere failure to maintain in-

§ 523(a)(6). An appropriate order will be entered.

### ORDER

This 17 day of October, 1996, in accordance with the accompanying Opinion, it shall be, and hereby is, ORDERED as follows:

1. The debt of Defendant, James P. Brown, to Mark Choi, which arises from damages sustained in an automobile accident which occurred on October 22, 1992, is nondischargeable.

2. The debt of Defendant, Sharon L. Vogan, to Mark Choi, if any, is discharged.

surance were shown to have existed.