**In re Duwayne Allen WHEELER, Linda Jean Wheeler, Debtors.**

**Brian Smith, Plaintiff,**

**v.**

**Duwayne Allen Wheeler, Linda Jean Wheeler, Defendant.**

**Bankruptcy No. 03–00435. Adversary No. 03–9157.**

United States Bankruptcy Court, N.D. Iowa.

Nov. 22, 2004.

---

Linda Jean Wheeler, Center Point, IA, pro se.

Duwayne Allen Wheeler, Center Point, IA, pro se.

## ORDER RE COMPLAINT CHALLENGING DISCHARGEABILITY

PAUL J. KILBURG, Chief Judge.

This matter came on for trial on October 26, 2004 pursuant to assignment. Plaintiff Brian Smith was represented by attorney Kevin Ahrenholz. Debtors Duwayne and Linda Wheeler appeared pro se. After hearing evidence and arguments, the Court took the matter under advisement. The time for filing briefs has passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

### STATEMENT OF THE CASE

Plaintiff Brian Smith was injured while driving a truck for Debtors' trucking business. Debtors did not carry workers' compensation insurance. Mr. Smith asserts Debtors' liability for his injuries is excepted from discharge based on fraud, false

financial statement or defalcation while acting in a fiduciary capacity. Debtors assert the debt should be discharged.

## FINDINGS OF FACT

Debtors were previously co-owners of a trucking business, D.L. Wheeler Trucking Co., Inc., which is now defunct. Mr. Smith became a driver for the business in June 1999. On July 21, 1999, Mr. Smith and Mr. Wheeler were driving a load of broccoli through Nevada. Mr. Smith was behind the wheel and Mr. Wheeler was in the bunk of the semi tractor when the truck went off the road. Apparently, Mr. Smith had fallen asleep at the wheel. Mr. Smith sustained injuries and was hospitalized in Nevada.

Mr. Smith was awarded damages by the Iowa Workers Compensation Commissioner on January 2, 2002. The arbitration decision by the Commissioner states that an employer/employee relationship existed. This was established because the employer, Duwayne Wheeler or D.L. Wheeler Trucking Co., failed to answer and was held to be in default. The Iowa District Court for Black Hawk County entered judgment based on the arbitration decision, awarding permanent total disability benefits of $305.35 per week, $46,107.85 for accrued unpaid weekly benefits, $6,650.16 accrued interest and $29,012.80 in medical expenses.

Debtors were not insured to cover work-related injuries on the date of Mr. Smith's accident. Mr. Smith testified that he considered himself an employee of Debtors and assumed insurance was in place. Debtors did not post a sign at their business stating they were not providing workers' compensation insurance.

Mr. Smith began driving for Debtors' business in June of 1999, for a salary of $500 per week. The parties disagree as to the terms of his employment. Debtors testified that they were uneasy about hiring Mr. Smith because he had an accident from falling asleep at the wheel of a semi truck in 1994. Mr. Wheeler testified that Mr. Smith initially requested that he be paid "under the table." After discussions with Mrs. Wheeler and their tax preparer, Mr. Wheeler declined. Mr. Wheeler testified that he told Mr. Smith that he would need to go through a probationary period and that he would then be hired as an independent contractor. Mr. Smith asserts that he was an employee and denies having a conversation with Mr. Wheeler about being an independent contractor.

Debtors both testified regarding medical bills arising from Mr. Smith's accident. They assert that at the time of his medical treatment, Mr. Smith only made claims for reimbursement from Medicare and Medicaid. He did not at that time inquire about coverage from workers' compensation insurance. Debtors argue that only after he found that these sources would not pay for all medical expenses did Mr. Smith attempt to make a claim for workers' compensation. Debtors posit that this underscores the probability that Mr. Smith knew he was not entitled to workers' compensation because he was an independent contractor.

Mr. Smith argues that Debtors violated Iowa Code sec. 87.1 and 87.2 by not maintaining workers' compensation insurance and not posting a sign stating they did not have the insurance. He asserts that this Court is bound by the Workers' Compensation Commissioner's default finding that Mr. Smith was an employee of Debtors. He argues that Debtors made express and implied representations regarding their insurance coverage and had a fiduciary duty to disclose that any work related injuries were not covered by insurance.

## CONCLUSIONS OF LAW

Mr. Smith asserts amounts awarded against Debtors for his workers' compensation claim are excepted from discharge under § 523(a)(2)(A) (fraud or false pretenses), (a)(2)(B) (false financial statement), or (a)(4) (defalcation while acting in a fiduciary relationship). Section 523(a) states, in pertinent part:

(a) a discharge under section 727 ... of this title does not discharge an individual debtor from any debt–

...

(2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by–

(A) false pretenses, a false representation, or actual fraud, ...

(B) use of a statement in writing–

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

...

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

As the primary goal of the Bankruptcy Code is to provide honest debtors with a "fresh start," exceptions to discharge are generally construed narrowly against the creditor and liberally for the debtor. *In re Kline*, 65 F.3d 749, 751 (8th Cir.1995); *In re Van Horne*, 823 F.2d 1285, 1287 (8th Cir.1987). Plaintiffs have the burden to prove the elements of each claim by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

## SECTION 523(a)(2)

Section 523(a)(2)(A) excepts a debt from discharge if it is obtained by "false pretenses, a false representation, or actual fraud." Five elements must be satisfied before a debt will be excepted from discharge under § 523(a)(2)(A): (1) the debtor made false representations; (2) the debtor knew the representations were false at the time they were made; (3) the debtor made the representations with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on the representations, *Field v. Mans*, 516 U.S. 59, 72, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); and (5) the creditor sustained the alleged injury as a proximate result of the representations having been made. *Van Horne*, 823 F.2d at 1287. Additionally, § 523(a)(2) has been found to require that the debt arise from the debtor's fraudulent acquisition of money, property, services or credit, or that the debtor obtains some benefit through the fraud or misrepresentation. *In re Maurer*, 256 B.R. 495, 500 (8th Cir. BAP 2000); *In re Bonefas*, 41 B.R. 74, 77 (Bankr.N.D.Iowa 1984) ("The initial question to be answered for a § 523(a)(2) dischargeability complaint is whether the debtor actually obtained any money, property, services, or an extension, renewal or refinance of credit.")

Subsection (A) of § 523(a)(2) applies other than when the underlying statements are "respecting the debtor's ... financial condition." Subsection (B) applies where the relevant statements are "in writing" and "respecting the debtor's ... financial condition." The question whether § 523(a)(2)(A) or § 523(a)(2)(B) applies turns on whether the alleged false statements are respecting Debtors' financial condition. *First Nat'l Bank v. Pontow*, 111 F.3d 604, 609 (8th Cir.1997).

Such statements are not limited to mere balance sheets, but can include a much broader class of statements. *Id.*

■ The elements of § 523(a)(2)(B) require that: (1) the false financial statement is a writing respecting the debtor's financial condition; (2) the financial statement is materially false; (3) the debtor intended to deceive; and (4) the creditor reasonably relied on the statement. *In re McCleary,* 284 B.R. 876, 885 (Bankr. N.D.Iowa 2002). The first element under § 523(a)(2)(B) requires application of a two-prong test. The first prong is a determination of the existence of a document and the second prong focuses on the content of the document. *Id.* An objecting creditor who relies on a debtor's oral misrepresentations of his or her financial wherewithal will not be entitled to a nondischargeability determination under § 523(a)(2)(B). *Id.*

### SECTION 523(a)(4)

■ To except a debt from discharge for fraud or defalcation while acting in a fiduciary capacity under of § 523(a)(4), plaintiff must establish the following two elements: (1) that a fiduciary relationship existed between Debtors and Plaintiff; and (2) that Debtors committed fraud or defalcation in the course of that fiduciary relationship. *In re Montgomery,* 236 B.R. 914, 922 (Bankr.D.N.D.1999). With regard to the first element, whether a relationship is a fiduciary relationship within the meaning of § 523(a)(4) is a question of federal law. *In re Cochrane,* 124 F.3d 978, 984 (8th Cir.1997). The fiduciary relationship must be one arising from an express or technical trust. *In re Long,* 774 F.2d 875, 878 (8th Cir.1985). A mere contractual relationship is less than what is required to establish the existence of a fiduciary relationship. *Werner v. Hofmann,* 5 F.3d 1170, 1172 (8th Cir.1993).

The fiduciary relationship of § 523(a)(4) does not encompass ordinary commercial relationships such as debtor/creditor or principal/agent. *In re Heister,* 290 B.R. 665, 673 (Bankr.N.D.Iowa 2003). Further, an employee/employer relationship is generally insufficient to constitute a fiduciary relationship under § 523(a)(4). *In re Petersen,* 296 B.R. 766, 786 (Bankr.C.D.Ill. 2003).

■ Bankruptcy courts regularly look to state law to determine whether fiduciary capacity exists. *In re Long,* 774 F.2d 875, 878 (8th Cir.1985); *In re Kondora,* 194 B.R. 202, 208 (Bankr.N.D.Iowa 1996). "The 'technical' or 'express' trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law." *In re Cook,* 263 B.R. 249, 255 (Bankr.N.D.Iowa 2001). State law is therefore important in determining whether a party has acted in a fiduciary capacity. *Id.*

■ Under Iowa law, a trust has been defined as "a fiduciary relation with respect to property, subjecting the person by whom the property is held to equitable duties to deal with the property for the benefit of another person, which arises as the result of a manifestation of intention to create it." *State v. Caslavka,* 531 N.W.2d 102, 105 (Iowa 1995). This definition of a trust imposes a requirement that there be "some objective manifestation of an intention to create the relationship as defined in the quoted definition." *Id.* A fiduciary relationship cannot be assumed without an objective manifestation of intent to create it. *Id.* One indicia of a trust relationship is the requirement of a separate bank account for the receipt and holding of trust funds. *In re Pehkonen,* 15 B.R. 577, 581 (Bankr.N.D.Iowa 1981).

In *In re Shahrokhi*, 266 B.R. 702, 708 (8th Cir. BAP 2001), a creditor who drove a taxicab leased from the debtor sought to except a debt from discharge based on the debtor's failure to maintain insurance on the vehicle. The B.A.P. concluded that the relationship between the driver and the debtor was merely contractual, not fiduciary. *Id.*

## DISCHARGEABILITY OF WORKERS' COMPENSATION CLAIMS

Several courts have considered the application of § 523(a)(4) to workers' compensation claims. In cases such as *In re Verhelst*, 170 B.R. 657, 661 (Bankr. W.D.Ark.1993), courts have held that an employer with an obligation to obtain workers' compensation insurance does not serve as a fiduciary for the employee under § 523(a)(4). The same conclusion was also reached in *In re Grzywacz*, 182 B.R. 176, 177 (Bankr.E.D.Mich.1995); *In re Peel*, 166 B.R. 735, 738 (Bankr.W.D.Okla. 1994); *In re France*, 138 B.R. 968, 971 (D.Colo.1992); *Kraemer v. Crook*, 94 B.R. 207, 210 (N.D.Ga.1988), *aff'd* 873 F.2d 1406 (11th Cir.1989). The Court is not aware of any cases in which the employer is considered a fiduciary in these circumstances.

In many of these cases, the courts also consider dischargeability under § 523(a)(2)(A). The consensus is that the workers' compensation claim is not excepted from discharge under that provision, either. *See In re Adkins*, 183 B.R. 702, 706 (Bankr.M.D.N.C.1995); *Verhelst*, 170 B.R. at 660; *Peel*, 166 B.R. at 738; *France*, 138 B.R. at 971. In *Adkins*, the court found the employer/debtor had not made any express or implied representation regarding insurance coverage and the employee had not relied on any representation. 183 B.R. at 706. In *Verhelst*, the court stated that while the employee had lost his right to workers' compensation insurance, the debtor/employer did not obtain any benefit from the employee's loss. 170 B.R. at 660. Thus, the employee had failed to carry the burden to prove that the debt was for money, property, services or extension of credit obtained by false pretenses under § 523(a)(2)(A). *Id.* In *Peel*, the court found that a workers' compensation liability arose as a consequence of false representations. This amount, however, was not "obtained" from the employee by false pretenses. 166 B.R. at 738. Instead, only the amount the debtor unlawfully withheld from the employee's wages for insurance premiums was excepted from discharge. *Id.* In *France*, the court decided the employer/debtor did not make a false representation because he did not know that workers' compensation coverage had lapsed. 138 B.R. at 971.

## ANALYSIS

Principles of res judicata or the Rooker–Feldman doctrine may have applicability here. However, the Court feels this case can be resolved without such analysis.

Rather than implicate the principles of res judicata or the Rooker–Feldman doctrine, the Court assumes without deciding that Debtors were Mr. Smith's employers. Debtors need not successfully challenge the Commissioner's arbitration decision regarding their status as employers in order for this Court to determine whether the resulting debt is dischargeable.

Mr. Smith has failed to meet his burden under § 523(a)(2)(B) because he has not identified a written statement by Debtors respecting their financial condition. Mr. Smith argues that the lack of a posted written statement required under Iowa Code sec. 87.2 comes within the § 523(a)(2)(B) exception to discharge. The Court concludes that subsection(B) applies only to written statements, not to the lack thereof.

The Court also concludes that Mr. Smith has failed to meet his burden under § 523(a)(4). Pursuant to the foregoing cases, Debtors were not acting in a fiduciary relationship toward Mr. Smith in their role as his employers. Mr. Smith has not cited any contrary case authority, and the Court is aware of none. Neither the Workers' Compensation statute in Iowa Code Chapter 85, Iowa Code Chapter 87 covering insurance of liability, nor Iowa case law specifically identifies employers as fiduciaries on behalf of their employees. The Court concludes no fiduciary relationship existed between the parties, making § 523(a)(4) inapplicable.

The remaining claim arises under § 523(a)(2)(A). As an initial matter, Mr. Smith has not shown that Debtors obtained any benefit in the form of money, property, services or credit from any alleged fraud or false representation. Mr. Smith is also required to prove Debtors knowingly made false representations with the intent to deceive Mr. Smith. He argues that Debtors' failure to notify employees of their lack of workers' compensation insurance was done knowingly with the intent to induce employees such as Mr. Smith into working for them.

Debtors testified that they believed their drivers were independent contractors, making the workers' compensation statutes inapplicable to their trucking business. They stated at trial and in their brief that their tax returns show they treated all drivers as independent contractors for the tax years 1998 through 2002. Mr. Smith has not refuted this assertion. Debtors both also testified that they discussed whether to hire Mr. Smith as an independent contractor with their tax professional. They assert that Mr. Wheeler stated to Mr. Smith that he would work as an independent contractor. Mr. Smith testified that he did not have such a conversation with Mr. Wheeler.

Based on the record, the Court concludes that Debtors did not knowingly, with intent to deceive, misrepresent their insurance coverage to Mr. Smith. Debtors have shown they had a good faith belief that their drivers, including Mr. Smith, were independent contractors and thus not covered by workers' compensation laws.

Mr. Smith has also failed to prove by a preponderance of the evidence that he justifiably relied on any representation by Debtors regarding insurance coverage or that such representation was the proximate cause of his injury and workers' compensation claim. As Debtors point out, Mr. Smith did not initially attempt to make a claim for workers' compensation coverage at the time of his semi tractor accident. Instead, he sought coverage from Medicare and Medicaid. Debtors also testified that Mr. Smith originally preferred to be paid "under the table" in order that any income would not reduce disability benefits he was receiving. The Court is inclined to believe Mr. Wheeler's version of discussions he had with Mr. Smith about becoming a driver for his company. Obviously, Mr. Smith was not concerned with the existence of workers' compensation insurance when negotiating for work as a driver for Debtors' trucking company. Similar reasoning is applicable to a finding that Mr. Smith has failed to prove he was injured as a proximate result of alleged representations by Debtors regarding workers' compensation insurance.

**WHEREFORE,** Plaintiff Brian Smith's Complaint Challenging Dischargeability of Debt and to Deny Discharge is DENIED.

**FURTHER,** Plaintiff has failed to prove the elements of his claims under §§ 523(a)(2)(A), 523(a)(2)(B) or 523(a)(4) by a preponderance of the evidence.