**In re Jerry L. GARRETSON.**

**EBCO Construction Group, LLC, Plaintiff**

**v.**

**Jerry L. Garretson, Defendant.**

**Bankruptcy No. 4:05–bk–25235 E. Adversary No. 4:06–ap–1049.**

United States Bankruptcy Court, E.D. Arkansas, Little Rock Division.

Oct. 23, 2007.

**ORDER DENYING PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT**

AUDREY R. EVANS, Bankruptcy Judge.

Plaintiff, EBCO Construction Group, LLC (hereafter referred to as **"EBCO"**), filed a *Complaint to Determine Dischargeability of Debt and Objection to Discharge* on January 16, 2006. *Pro se* Defendant Jerry Garretson (hereafter referred to as **"DPS"** or **"Drywall Painting Specialists, Inc."** or **"Garretson"**) filed an *Answer* on February 14, 2006. Now before the Court is the *Second Motion for Summary Judgment* and brief in support, filed by EBCO on August 2, 2007.[1] Garretson filed a *Reply to the Second Motion for Summary Judgment* and brief in support on October 1, 2007. EBCO filed a *Reply to Defendant's Reply to Second Motion for Summary Judgment* and brief in support on October 12, 2007. Garretson filed a *Response to Plaintiff's Reply to Defendant's Reply to Second Motion for Summary Judgment* and brief in support on October 19, 2007. The parties did not request a hearing. The court has reviewed all relevant motions, briefs, responses and applicable law, and for the reasons stated herein, denies EBCO's *Second Motion for Summary Judgment.*

William P. Allison, Allison Law Firm, P.A., Frank Stewart Headlee, Hopkins Law Firm, Little Rock, AR, for Plaintiff.

Jerry L. Garretson, pro se.

**FACTS**

EBCO filed suit against Garretson on November 5, 2003, for breach of contract, in the Circuit Court of Miller County, Missouri (the **"Missouri State Court"**) (CV503–524CC). Garretson failed to file a

1. The Plaintiff previously filed a *Motion for Summary Judgment* based on the Debtor's failure to answer requests for admissions; after a hearing on the motion, the Court ruled that Debtor should have additional time to answer Plaintiff's request for admissions. Debtor eventually filed his answer, and the Plaintiff's *Motion for Summary Judgment* was denied as moot.

timely answer. On June 15, 2004, EBCO submitted a Request for Admissions and Garretson again failed to file a timely answer. Thereafter, on October 14, 2004, the Court granted an Interlocutory Default Judgment as to liability, and pursuant to Mo.R.Civ.P. 59.01, the submitted requests for admissions were deemed admitted. On February 17, 2005, EBCO moved for summary judgment (the **"State Court Summary Judgment Motion"**) against Garretson based on the following deemed admissions (as recited in EBCO's State Court Summary Judgment Motion):

a. Prior to its dissolution, Garretson was a director and/or officer of DPS;

b. From and after the time that DPS was dissolved, Garretson continued to conduct business in the name of DPS;

c. The copy of the contract ("Exhibit A" hereto) is a true and accurate copy of the contract between DPS and EBCO on the Miller County Courthouse project.

d. After the original subcontract between EBCO and DPS was entered into, the three change orders included in Exhibit A hereto were executed and adjusted the amount of the subcontract to $348,098.86.

e. EBCO performed all conditions, covenants and promises required of it in accordance with the terms and conditions of such subcontract;

f. Certain work furnished and installed by DPS was defective and was repaired and/or replaced by EBCO;

g. DPS did not pay its suppliers and sub-subcontractors in full for work and/or materials provided to the Project.

h. DPS did not complete all of the work expected of it pursuant to its contract with EBCO.

i. EBCO informed DPS on several occasions that the manpower supplied by DPS for the Project was insufficient.

j. EBCO formally terminated DPS from the Project by the letter [sic] October 31, 2002 which was attached to the Request for Admissions as "Exhibit C."

k. EBCO incurred the costs and expenses set forth in EBCO's Petition in this matter as a result of DPS' failure to complete and/or correct its deficient work on the Project.

EBCO claimed that based on these admissions, DPS breached the subcontract with EBCO in the following respects (as set forth in EBCO's State Court Summary Judgment Motion):

a. DPS furnished and installed defective work which had to be repaired and/or replaced;

b. DPS failed to properly pay its suppliers and sub-subcontractors which required EBCO to pay such suppliers and sub-subcontractors in accordance with the payment bond EBCO was required to provide for the Project;

c. DPS failed to timely complete the work required of DPS in accordance with the subcontract; and

d. DPS failed to complete the work required of DPS under the subcontract which required EBCO to engage other subcontractors to complete the work of DPS.

In the State Court Summary Judgment Motion, EBCO alleges in Paragraph 2:

EBCO and DPS entered into that certain subcontract under which DPS agreed, *inter alia,* to furnish certain framing and drywall work in accordance with applicable plans and specifications for the sum of $350,000. *A copy of*

*EBCO's contract and change orders with DPS are attached hereto as "Exhibit A" and incorporated herein by this reference.*

The Exhibit A attached to the copy of EBCO's State Court Summary Judgment Motion is NOT a subcontract between DPS and EBCO (hereinafter referred to as the **"Subcontract"**). The attached Subcontract is between Otis Elevator Co. and EBCO, signed by a Gary Zimmerman on behalf of Otis Elevator Co. EBCO has not explained this discrepancy, and it raises serious concerns regarding the validity of the State Court judgment. Further, Garretson maintains in his *Reply to the Second Motion for Summary Judgment* filed in this adversary proceeding that neither he nor DPS ever had a contract with EBCO.

After Garretson did not appear at a hearing on EBCO's motion for summary judgment, the Missouri State Court granted summary judgment in favor of EBCO on April 14, 2005, in the amount of $294,743.21.

On October 10, 2005, Garretson filed a voluntary petition for Chapter 7 relief in this Court.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure, as applied to these proceedings through Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment shall be granted where the pleadings, depositions, answers to interrogatories, admissions or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Burnette v. Dow Chemical Company,* 849 F.2d 1269, 1273 (10th Cir.1988). "In determining whether a genuine question of material fact exists, this court is required to view the facts in [the] light most favorable to the nonmoving party...." *In re Gilder,* 225 B.R. 439, 448 (Bankr.E.D.Mo.1998) (citation omitted). Summary judgment is appropriate when a court can conclude that no reasonable juror could find for the nonmoving party on the basis of the evidence presented in the motion and response. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## ANALYSIS

EBCO, in its *Second Motion for Summary Judgment,* alleges that there are no issues of material fact in this case because pursuant to the doctrine of collateral estoppel all relevant facts were adjudicated by the Missouri State Court. Specifically, EBCO alleges that Garretson is not entitled to have the debt discharged as the undisputed facts establish that the debt owed to EBCO is subject to the exceptions to discharge set forth in 11 U.S.C. §§ 523(a)(2) and (a)(4).[2] Garretson contends that summary judgment based on collateral estoppel is inappropriate because the issues presented in this case were not raised or decided in the previous litigation. Accordingly, the issue is whether a state court's finding that damages caused by the Defendant's breach of a written contract supports a determination, by principles of collateral estoppel, that a debt owed to the Plaintiff is nondischargeable because the debt was obtained either by false representations under 11 U.S.C. § 523(a)(2), or

**2.** Although EBCO argued § 523(a)(4) in its *Second Motion for Summary Judgment,* this exception to discharge was not specifically pled in EBCO's complaint. Count III of EBCO's Complaint sets forth EBCO's § 523(a)(2) cause of action, only mentioning § 523(a)(4) in the concluding paragraph which appears to be a typographical error.

by defalcation while acting in a fiduciary position under 11 U.S.C. § 523(a)(4).

■ In determining if the Missouri State Court judgment will preclude litigation of the same issues in bankruptcy court, the court must apply the laws of the forum state where the judgment was entered. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). Therefore, in this case, the Court uses Missouri law to determine whether the State Court judgment controls the outcome of this adversary proceeding based on the principles of collateral estoppel.[3]

■ In Missouri, four factors must be satisfied before collateral estoppel applies: "(1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or was in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." *Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713, 719 (Mo.1979). In this case, collateral estoppel does not apply because the first and second factors have not been met. (The Court does not analyze or make any decision with respect to the third and fourth factors). The Court addresses the second factor first because it is dispositive of this motion.

## I. Judgment on the Merits

■ The second factor in applying collateral estoppel under Missouri law is whether the prior adjudication resulted in a judgment on the merits. In this case, the Missouri State Court found by interlocutory default judgment[4] that Garretson breached the subcontract with EBCO and thus awarded EBCO damages including the principal amount, attorney's fees and interest. "In Missouri, a judgment entered as a result of a defendant's failure to defend the lawsuit ... does not constitute a judgment on the merits of the case for collateral estoppel purposes." *In re Brewer*, Slip copy, 2006 WL 1109409 (Bankr. W.D.Mo.2006). Missouri law also states that in evaluating the effect of collateral estoppel, a "judgment on the merits is one rendered after argument and investigation and when it is determined which party is in the right, as distinguished from a judgment rendered upon some preliminary or technical point, or by default, and without trial." *Johnson v. Missouri Dept. Of Health and Senior Services*, 174 S.W.3d 568 (Mo.App.W.D.2005) (citing *St. Louis University v. Hesselberg Drug Co.*, 35 S.W.3d 451, 455 (Mo.App.2000)). Because summary judgment was entered after Garretson failed to defend the lawsuit, the Missouri State Court judgment was not entered on the merits of the case and does not qualify for collateral estoppel.

In light of this finding, the Court need not rule on any of the other factors. However, the Plaintiff has asserted two other arguments and the Court will address each of them, particularly as addressing them now may help resolve some issues for trial.

## II. Identical Issues

### A. 11 U.S.C. § 523(a)(2)

■ The first factor in determining whether collateral estoppel applies to a

---

3. The Court notes that EBCO and Garretson applied Arkansas collateral estoppel law in their arguments.

4. An order of interlocutory default judgment may be entered against a party against whom a judgment is sought if the party fails to answer or defend to the court. Mo. R. Civ. P. 74.05(b).

Missouri State Court judgment is whether the issues to be determined in the present action are identical to the issues presented in the prior action. In the present action, EBCO contends that the debt resulting from the Missouri State Court judgment is nondischargeable under 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) excepts from discharge any "money obtained by ... false pretenses, false representation, or actual fraud." "A 'false pretense' involves implied misrepresentation or conduct intended to create or foster a false impression," while "actual fraud ... consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another; [that is], something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." *In re Moen*, 238 B.R. 785, 790–91 (8th Cir. BAP 1999) (citations omitted). In the Eighth Circuit, a party must prove by a preponderance of the evidence the following elements to proceed under Section § 523(a)(2)(A): (1) the debtor made false representations; (2) at the time made, the debtor knew them to be false; (3) the representations were made with the purpose of deceiving the creditor; (4) the creditor justifiably relied on the representations; and (5) the creditor sustained injury as a proximate result of the representations having been made. *In re Banke*, 275 B.R. 317, 326 (Bankr.N.D.Iowa 2002).

EBCO alleges that the issues of law and fact, decided by the Missouri State Court, which should be given collateral estoppel effect include Garretson's contractual relationship to EBCO, Garretson's misrepresentations, and his ultimate failure to fulfill his obligations. Specifically, EBCO argues that Garretson falsely represented himself when he executed a Subcontractor Application for Certificate for Payment (the "**Application**") stating that he had paid for all material, labor, tools, equipment and construction facilities furnished by it when, in fact, he had not paid the suppliers and sub-subcontractors. The Application was not deemed admitted in the Missouri State Court proceeding, and was not attached to the State Court Summary Judgment Motion, or attached to any pleadings in this case (as far as the Court can tell).[5] Further, while Garretson seems to acknowledge the existence of such an application, he argues that it was signed for bank purposes only and that its execution was not made in reliance on DPS's completion of the contract. The issue of Garretson's alleged false representations was never alleged or addressed by the Missouri State Court. While it was deemed admitted that DPS and EBCO had a valid contract, and that Garretson and DPS breached that contract, all that was established by the Missouri State Court was breach of contract. Furthermore, EBCO has yet to show that it had a subcontract with DPS or Garretson, which raises a question as to whether the Missouri State Court judgment was obtained by mistake or even fraud. In sum, the elements required to establish nondischargeability under § 523(a)(2) were not at issue in the Missouri State Court case, and accordingly, this Court may not give collateral estoppel effect to the State Court judgment.

**B. 11 U.S.C. § 523(a)(4)**

 Although not specifically pled in its Complaint, EBCO also contends that the debt arising from the Missouri State Court judgment is nondischargeable under 11 U.S.C. § 523(a)(4). Section 523(a)(4)

**5.** An unsigned example of such an application appears to be attached to the Subcontract with Otis Elevator Co. as Schedule C.

creates an exception from discharge for any debt "for fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). To prevail in an action under § 523(a)(4), the Plaintiffs must prove "(1) that a fiduciary relationship existed between Debtor and Plaintiff; and (2) that Debtor committed fraud or defalcation in the course of that fiduciary relationship." *In re Ziadeh,* 284 B.R. 893, 898 (Bankr. N.D.Iowa 2002) (citation omitted).

■■■■■ Whether a person is a fiduciary is a question of federal law. *Tudor Oaks Limited Partnership v. Cochrane (In re Cochrane),* 124 F.3d 978, 984 (8th Cir. 1997). The fiduciary relationship must be one arising from an express or technical trust. *Ziadeh* at 899 (citing *In re Long,* 774 F.2d 875, 878 (8th Cir.1985)). Simply labeling a particular relationship as a "trust" is insufficient to create a fiduciary capacity under the Bankruptcy Code. *In re Herndon,* 277 B.R. 765, 769 (Bankr. E.D.Ark.2002). In fact, "[a] mere contractual relationship is less than what is required to establish the existence of a fiduciary relationship." *In re Wheeler,* 317 B.R. 783, 789 (Bankr.N.D.Iowa 2004) (citing *Werner v. Hofmann,* 5 F.3d 1170, 1172 (8th Cir.1993)); *see also Ziadeh,* 284 B.R. at 899.

■■■ "Defalcation is defined as the 'misappropriation of trust funds or money held in any fiduciary capacity; [the]failure to properly account for such funds.'" *Cochrane,* 124 F.3d at 984 (citations omitted). The Eighth Circuit further held in *Cochrane* that "... 'defalcation' does not require evidence of intentional fraud or other intentional wrongdoing." *Id.* Citing *Cochrane,* the Court in *Herndon* explained, "[a] failure to apply funds entrusted to a fiduciary in accordance with the terms of the trust is a defalcation, whether intentional or not." 277 B.R. at 769. *See also [In re] Wright,* 266 B.R. [848] at 851 (Bankr.E.D.Ark.2001) ("[A]lthough something more than mere negligence or an innocent mistake is required, ignorance of the fiduciary responsibilities is not an excuse to defalcation if that ignorance leads to a fiduciary default.").

■■■ EBCO bases its claim that collateral estoppel should apply to the Missouri State Court judgment on the grounds that the Subcontract allegedly entered into between DPS and EBCO (which was not attached to EBCO's State Court Summary Judgment Motion) establishes a fiduciary relationship. EBCO asserts that DPS entered into a fiduciary relationship with EBCO by (1) indemnifying EBCO against claims, damages and expenses related to the subcontract, and (2) obtaining lien waivers from subcontractors. EBCO also asserts that while in a fiduciary position DPS misappropriated funds while acting as a fiduciary by not paying its suppliers and subcontractors with the money that DPS received from EBCO. However, no fiduciary relationship was specifically alleged in the Missouri State Court case (and no express trust is set forth in the Subcontract with Otis Elevator Co. submitted in that case, and even if such express trust exists between Otis Elevator Co. and EBCO, it would be completely irrelevant to this case). In EBCO's Reply Brief, EBCO asserts that there is an indemnity provision in the Subcontract that creates a fiduciary relationship based on case law in this District, including this Court's decision in *IFIC v. Fox (In re Fox),* 357 B.R. 770 (Bankr.E.D.Ark.2006). EBCO fails to appreciate the language of the indemnity/trust fund provision at issue which created express trusts in those cases. The indemnity/trust fund provision in *Fox* stated:

**TRUST FUND**

**FOURTH:** If any of the Bonds are executed in connection with a contract

which by its terms of [sic] by law prohibits the assignment of the contract price, or any part thereof, the Contractor and Indemnitors covenant and agree that all payments received for or on account of said contract *shall be held as a trust fund* in which the Surety has an interest, for the payment of obligations incurred in the performance of the contract and for labor, materials, and services furnished in the prosecution of the contract or any authorized extension or modification thereof; and further, it is expressly understood and declared that all monies due under any contract or contracts covered by the Bonds *are trust funds,* whether in the possession of the Contractor or Indemnitors or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract or contracts for which the Surety would be liable under any of said Bonds, which *said trust* also inures to the benefit of the Surety for any liability or loss it may have or sustain under any said Bonds, and this Agreement and declaration shall also constitute notice of *such trust.*

(Emphasis added). 357 B.R. at 772. The indemnity/trust fund provision in *Fox* was identical to the provision in the *Wright* case. *See Wright,* 266 B.R. at 850. A similar provision created an express trust in the *Herndon* case. 277 B.R. at 767. Accordingly, the Subcontract attached to EBCO's State Court Summary Judgment Motion, which merely includes a hold harmless provision, does not create an express trust, even between Otis Elevator Co. and EBCO. Accordingly, even if the Missouri State Court judgment were based on an identical subcontract with Debtor, it would not establish for collateral estoppel purposes that a fiduciary relationship existed between EBCO and Debtor. Clearly, the issues necessary to prevail on a § 523(a)(4) claim (even if it were properly pled) were not at issue in the Missouri State Court case, and therefore, collateral estoppel does not apply and summary judgment is not appropriate.

## CONCLUSION

 In conclusion, the Court finds that the State Court judgment was entered because the Missouri State Court entered summary judgment based on EBCO's mistaken assertion that a contract existed between EBCO and the Debtor, and that Debtor failed to respond to admissions regarding such contract. EBCO alleged in State Court that such contract was in fact attached to EBCO's request for admissions when it was not. EBCO then moved for summary judgment based on the Debtor's deemed admissions regarding such contract, and EBCO attached a copy of the Subcontract between EBCO and Otis Elevator Co. asserting that it was a true and correct copy of the contract between EBCO and Debtor. This Court will not rely upon a State Court judgment which was entered on false pretenses. Further, an Order to Show Cause will be entered to allow EBCO and its attorneys to show cause as to why they should not be sanctioned for presenting what only could be referred to charitably as bold inaccuracies to this Court.[6] If, at the show cause hearing, it is apparent that the incorrect document was presented to the Missouri State Court, this Court will refer EBCO's attor-

---

**6.** The Court has the authority, under Federal Rule of Bankruptcy Procedure 9011, its inherent authority, and pursuant to 11 U.S.C. § 105(a), to sanction persons appearing before it. *See* FED. R. BANKR.P. 9011(c)(1)(B); *Walton v. LaBarge (In re Clark),* 223 F.3d 859, 864 (8th Cir.2000); *In re Brown,* 152 B.R. 563, 567 (Bankr.E.D.Ark.1993) *(citing Harlan v. Lewis,* 982 F.2d 1255 (8th Cir.1993) and *Citizens Bank & Trust Co. v. Case (In re Case),* 937 F.2d 1014, 1023 (5th Cir.1991)); 11 U.S.C. § 105(a).

224

neys in that case to the Supreme Court of Missouri for possible disciplinary action.

In addition to the inaccurate Subcontract on which this entire matter is based, summary judgment would not be appropriate on collateral estoppel grounds even if a Subcontract between EBCO and the Debtor were provided. The State Court judgment was entered following the Debtor's failure to participate in the lawsuit, and therefore, is not a judgment on the merits under Missouri law. Furthermore, the issues crucial to a § 523(a)(2) or § 523(a)(4) case were neither presented nor ruled upon by the Missouri State Court.

Finally, having filed three motions for summary judgment (one in Missouri State Court, and two in this Court) premised on a contract to which the Debtor was not a party, EBCO has lost its right in this Court to obtain a judgment in any way other than through a trial on the merits in which testimony is given by an individual under oath in the presence of the Court.

For the reasons stated herein, it is hereby

**ORDERED** that Plaintiff's *Second Motion for Summary Judgment* is **DENIED**; trial will be scheduled by subsequent order.

**IT IS SO ORDERED.**